UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

---

| | |
|---|---|
| STEVEN L. BOND, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 11-CV-2225 |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| KEITH O. ANGLIN, VICTOR CALLOWAY, ) | |
| MARY MILLER, TERI IRWIN, PAUL ) | |
| TALBOT, M.D., STEVEN WHITE, and ) | |
| LINDA DAILY, ) | |
| ) | |
| Defendants. ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#94) filed by Defendants Keith O. Anglin, Victor Calloway and Mary Miller (Danville Defendants) and the Motion for Summary Judgment (#97) filed by Defendants Wexford Health Sources Inc., Teri Irwin, Paul Talbot, Steve White and Linda Daily (Wexford Defendants). Plaintiff has not responded to the Motions, although he was allowed additional time to do so. This court has carefully considered Defendants' arguments and the documents filed. Following this careful and thorough consideration, Defendants' Motions for Summary Judgment (#94, #97) are GRANTED.

BACKGROUND

Plaintiff filed his pro se Complaint (#1) on September 21, 2011, brought pursuant to 42 U.S.C. § 1983. Plaintiff stated that, on October 20, 2010, he was transferred from Graham Correctional Center to Danville Correctional Center. Plaintiff alleged that, at

Danville, he was denied treatment for his serious medical conditions and was not given a wheelchair. Plaintiff alleged that he filed grievances and was then moved to a housing unit farther away from the hospital and was forced to walk twice as far on crutches and fell many times. On November 18, 2011, this court held a merit review hearing and concluded that Plaintiff's Complaint stated the following federal claims: (1) deliberate indifference to his serious medical needs in violation of the Eighth Amendment; and (2) retaliation for filing grievances. Defendants waived service and filed Answers to the Complaint. On February 16, 2012, this court entered a case management order and set deadlines for completing discovery and for filing dispositive motions. The case was set for a final pretrial conference on March 8, 2013, and a jury trial on April 1, 2013. On May 7, 2012, Plaintiff provided a Notice (#67) which stated that he had been transferred from Danville to the Taylorville Correctional Center. On August 3, 2013, Plaintiff notified this court that he was going to be released on August 27, 2012 and provided his new address in Decatur, Illinois.

On November 29, 2012, the Danville Defendants filed a Motion for Summary Judgment (#94) and a Memorandum of Law in support (#95) with a copy of the transcript of Plaintiff's deposition, taken October 31, 2012. The Danville Defendants argued that they were entitled to summary judgment on Plaintiff's claims because the medical treatment provided to Plaintiff did not constitute deliberate indifference to his serious medical needs, they could not be liable based upon supervisory liability under § 1983 and no Defendants retaliated against Plaintiff for any exercise of his First Amendment rights. On November 30, 2012, the Wexford Defendants filed a Motion for Summary Judgment (#97) and a

Memorandum in Support (#98) with attached exhibits. The Wexford Defendants argued that they were entitled to summary judgment on Plaintiff's claims because certain of Plaintiff's claimed ailments are not objectively serious under the Eighth Amendment and because they were not deliberately indifferent to any medical need of Plaintiff, serious or otherwise.

Notices were sent to Plaintiff regarding both of the Motions for Summary Judgment (#96, #99). The Notices stated:

> NOTICE IS HEREBY GIVEN that a case-dispositive motion (such as a motion for summary judgment or motion for judgment on the pleadings) has been filed. See, Fed.R.Civ.P. 56. Please be advised that you have **twenty-one (21)** days from the date of service to respond to the motion. If you do not respond, the motion, if appropriate, will be granted and the case will be terminated without a trial. See, generally, Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982); Timms v. Frank, 953 F.2d 281 (7th Cir. 1992). Under the court's local rules, a motion is deemed to be uncontested if no opposing brief is filed. See L.R. CDIL 7.1(D)(2).
>
> When a motion for summary judgment is made and properly supported, you must not simply rely upon the allegations made in your complaint. Rather, you must respond by affidavit(s) or as otherwise provided in Rule 56 of the

>Federal Rules of Civil Procedure, a copy of which is attached. Your response must set forth specific facts showing that there is a genuine issue of material fact for trial. If you do not submit affidavits or other documentary evidence contradicting the defendants' assertions, the defendants' statement of facts will be accepted as true for purposes of summary judgment. **See Fed.R.Civ.P 56(e) and L.R. 7.1 (attached).**

The clerk's office attached and sent a copy of Rule 56 and a copy of Local Rule 7.1 with the Notices. Unfortunately, the record shows that the Notices were sent to Plaintiff at the Taylorville Correctional Center rather than his address in Decatur, Illinois.

On December 6, 2012, Plaintiff filed a Motion to Appoint Counsel (#100).[1] Plaintiff stated that he had been bombarded with papers from both attorneys representing Defendants regarding summary judgment. Plaintiff said he did not know anything about how to respond to the filings and needed help to respond. Plaintiff stated that he had continued looking for an attorney since his release from prison but no one would take his case. Plaintiff said he was begging this court to appoint him an attorney and stated that it would be a miscarriage of justice if his pleas continued to be ignored. Plaintiff noted that the deadline for his response was December 27, 2012.

On December 10, 2012, this court entered an Order (#101). This court recognized that

---

[1] Plaintiff titled the Motion "Sixth Motion for Court to Appoint Counsel." However, it was really Plaintiff's fifth motion to appoint counsel. This court had denied Plaintiff's four previous motions for the appointment of counsel.

Plaintiff had shown that he had made adequate attempts to obtain counsel on his own and believed that he was unable to continue to represent himself in the case. This court, however, declined to appoint counsel. This court noted that there was no constitutional or statutory right to counsel in federal civil cases. This court concluded that Plaintiff had shown that he was able to file motions and litigate the case on his own. This court therefore concluded that proceeding with this case was not beyond Plaintiff's abilities considering the complexity of the case and Plaintiff's competency to litigate his case. This court directed the clerk to send the Notices regarding the Motions for Summary Judgment to Plaintiff's address in Decatur. This court noted that the Notices would provide some guidance to Plaintiff regarding his responses to the Motions for Summary Judgment. This court further stated that it would allow Plaintiff additional time to prepare and file his responses to the Motions for Summary Judgment and stated that the responses were due by January 30, 2013. This court also stated that, in order to allow adequate time for the court to rule on the Motions for Summary Judgment, the final pretrial conference set for March 8, 2013, and the jury trial set for April 1, 2013, were vacated.

Although he was allowed a lengthy period of time to prepare and file his responses, Plaintiff has not responded to the Motions for Summary Judgment and the time allowed for doing so has passed.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Rule 7.1(D)(2) of the Local Rules of the Central District of Illinois provides:

>Within 21 days after service of a motion for summary judgment, any party opposing the motion must file a response. A failure to respond will be deemed an admission of the motion.

Further, when the non-movant does not respond to the movant's statement of facts, the non-movant concedes the movant's version of the facts. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994); Columbia Pictures Indus., Inc. v. Landa, 974 F. Supp. 1, 3 (C.D. Ill. 1997). The Seventh Circuit has repeatedly held that such a rule is "entirely proper." Doe v. Cunningham, 30 F.3d 879, 882 (7th Cir. 1994).

However, a party's failure to submit a timely response to a motion for summary judgment does not automatically result in summary judgment for the moving party. LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 392 (7th Cir. 1995); see also Archer Daniels Midland Co. v. Whitacre, 60 F. Supp. 2d 819, 823 (C.D. Ill. 1999). It remains "the movant's burden to demonstrate that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law." Doe, 30 F.3d at 883. Accordingly, the district court must make the further finding that summary judgment is proper as a matter of law. LaSalle Bank, 54 F.3d at 392, quoting Wienco Inc. v. Katahn Assocs., Inc., 965 F.2d 565, 568 (7th Cir. 1992).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only:

to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge, 24 F.3d at 920.

## II. THE DANVILLE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The undisputed facts set out by the Danville Defendants show that Plaintiff testified at his deposition that he had the following medical conditions: chronic migraines; chronic arthritis and/or degenerative joint disease in his hip, neck and knee; bipolar mood disorder; damaged nerves; and an injured shoulder from a fall in 2011. Plaintiff received medical treatment at Danville, including pain medication and medication to address his mental health issues. Plaintiff was able to use a cane and crutches to help him move around the prison and had low bunk, low gallery and slow walk permits. Plaintiff was not satisfied with the treatment provided at Danville, but is not a doctor and has no medical training.

Based upon these facts, Defendants argued, with citations to applicable authority, that no Defendants were deliberately indifferent to Plaintiff's serious medical needs and that they reasonably relied on the orders of medical personnel. Defendants also argued that Anglin and Calloway cannot be subject to liability because they had no personal involvement in Plaintiff's care. In addition, Defendants argued that there was no evidence to support Plaintiff's claim of retaliation. Defendants noted that Plaintiff testified at his deposition that he was only claiming retaliation by Calloway, so Defendants Anglin and Miller are entitled to summary judgment on his retaliation claim. Defendants also pointed out that Plaintiff testified that Calloway took action against him because he was seeking to be placed in a specific housing unit. Plaintiff also raised the possibility that Calloway moved Plaintiff until

his medical needs could be substantiated and then failed to follow up. Defendants argued that, based upon his own testimony, Plaintiff cannot show that his First Amendment activity was the reason for his transfer and cannot establish the elements of a First Amendment retaliation claim.

This court has carefully considered Defendants' arguments, the case law cited and the transcript of Plaintiff's deposition. Following this careful review, this court agrees with the Danville Defendants that they are entitled to judgment on Plaintiffs' claims as a matter of law.

III. THE WEXFORD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In their statement of undisputed facts, the Wexford Defendants stated, in pertinent part, that Plaintiff entered the custody of the Illinois Department of Corrections in August 2010 following a spinal laminectomy surgery in May 2010. When he arrived at Danville after several months in receiving at Graham Correctional Center, Plaintiff had no devices to assist him in walking. Plaintiff's medical history at the time he was transferred into Danville included a laminectomy (back surgery), right arm nerve repair and arthritis. Plaintiff's mental health intake documents did not reflect any ongoing mental health treatment or medication. After arriving at Danville, Plaintiff was examined by Defendant Talbot. Talbot initially planned to admit Plaintiff to the healthcare unit as a permanent resident for observational purposes based upon Plaintiff's subjective report of his limitations. However, nursing staff informed Talbot that Plaintiff had been observed by security staff walking without his crutches. Talbot changed his plan for Plaintiff to issuance of permits for

crutches, slow walk, low bunk and low gallery.

Following the November examination, Plaintiff was able to manage on his crutches. However, according to Plaintiff, in January 2011 he was moved from housing unit 1, which is close to the healthcare unit and chow hall, to housing unit 4. After the move, he began experiencing falls. Following each of these falls, Plaintiff was examined by medical staff, including Defendants Talbot and White. None of Plaintiff's reported falls resulted in any objective evidence of any significant injury.

Defendant Talbot continued to follow Plaintiff's care during his stay at Danville from October 2010 to May 2012. This included numerous examinations, prescriptions for numerous medications for Plaintiff's osteoarthritis and a request for physical therapy to Talbot's supervisors which was granted. Talbot also made a recommendation to prison security that Plaintiff be housed in unit 1, which security was unable to accommodate. On January 4, 2011, Talbot spoke to Plaintiff's surgeon, Dr. Dold, who performed Plaintiff's cervical laminectomy. Dr. Dold told Talbot that Plaintiff's gait improved following the surgery and Plaintiff was able to walk without an assistive device. A post-operative MRI had been done and Dr. Dold did not feel that Plaintiff needed another one. In addition, Plaintiff was admitted to the healthcare unit for eight weeks for observation in May and June 2011 due to the apparent discrepancy between his neurological exams, which showed that his condition was improving, and his self-reported history of falls. During his eight week stay in the healthcare unit, Plaintiff experienced no falls. Talbot examined Plaintiff numerous times while he was in the healthcare unit and found that Plaintiff was stable, in no apparent

distress, able to ambulate satisfactorily with a quad cane and had good activities of daily living. Talbot continued to see Plaintiff regularly after he was discharged from the healthcare unit. On March 29, 2012, Talbot noted that Plaintiff walked well with a quad cane, sometimes carrying it.

In August 2011, Plaintiff began seeing Danville's mental health staff while in segregation after a self-referral. The psychologist noted that Plaintiff reported bipolar disorder but that malingering was suspected. In October 2011, Plaintiff saw the psychiatrist and was started on an antidepressant medication, which he continued taking until his transfer out of Danville on May 3, 2012. The psychiatrist did not diagnose Plaintiff as suffering from bipolar disorder.

This court has carefully reviewed the Wexford Defendants' arguments, the case law cited, and the lengthy documents they provided, including the transcript of Plaintiff's deposition and medical records from Plaintiff's incarceration at Danville. Following this careful review, this court agrees that the evidence does not show that Plaintiff suffered from bipolar disorder or chronic migraine headaches. This court also agrees that, with regard to Plaintiff's chronic arthritis, the undisputed facts show that Plaintiff has a chronic degenerative condition for which there is no cure. Nonetheless, Plaintiff's medical care at Danville that focused on managing his pain and encouraging him to attempt to ambulate was appropriate and does not evidence deliberate indifference. Plaintiff's claim amounts to a difference of opinion with medical professionals and a demand for specific care, which is not actionable under the Eighth Amendment. This court therefore agrees with the Wexford

Defendants that they are entitled to summary judgment on Plaintiff's claims against them.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motions for Summary Judgment (#94, #97) are GRANTED. Judgment is entered in favor of Defendants and against Plaintiff.

(2) This case is terminated.

ENTERED this 12th day of April, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE